IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


ARKANSAS WAREHOUSE, INC.                                    PLAINTIFF

v.                                    Case No. 2:16-CV-2008

SAINT-GOBAIN CERAMICS & PLASTICS, INC.                      DEFENDANT


## OPINION AND ORDER

Before the Court are cross motions for summary judgment.  Plaintiff Arkansas Warehouse, Inc. ("Arkansas Warehouse") filed a motion for summary judgment (Doc. 11) and supporting documents (Docs. 12, 13) on March 11, 2016.  Defendant Saint-Gobain Ceramics & Plastics Inc. ("Saint-Gobain") filed a response in opposition (Docs. 15, 16), to which Arkansas Warehouse replied (Doc. 20).  Saint-Gobain has also filed a motion for summary judgment (Doc. 17) with supporting documents (Docs. 18, 19), to which Arkansas Warehouse has responded in opposition (Docs. 21-23), and Saint-Gobain replied (Doc. 24).  Saint-Gobain filed a motion to continue the trial scheduled for November 7, 2016 (Doc. 25), and Arkansas Warehouse responded in opposition to a continuation.  (Doc. 26).  For the following reasons, the Court finds that Saint-Gobain's motion for summary judgment (Doc. 17) should be GRANTED, and Arkansas Warehouse's motion for summary judgment (Doc. 11) should be DENIED.  The motion to continue trial (Doc. 25) will be DENIED AS MOOT.

## I.  Background[1]

Beginning in 2013, Oxane Materials, Inc. ("Oxane") entered into three month-to-month oral contracts with Arkansas Warehouse for the lease of warehouse spaces in Fort Smith, Arkansas. (Doc. 13, ¶¶ 5, 7-10).  Oxane used the Arkansas Warehouse space to store raw materials and byproducts (collectively, "the materials") involved in its manufacturing processes.  (Doc. 12, pp. 2-3).  Arkansas Warehouse was consistently billing Oxane $52,050 per month for the continued use of the warehouse spaces at issue before this case arose.  (Doc. 13, ¶ 14).  In May 2015, Oxane ceased making payments under the oral contract.  (Doc. 13, ¶ 20).  On May 13, 2015, Oxane entered into a written contract with Saint-Gobain to sell the materials to Saint-Gobain.  (Doc. 13, ¶ 16).  Under that contract Saint-Gobain obligated itself to ship and dispose of the materials, and agreed that it would "endeavor" to do so on or before July 15, 2015.  (Doc. 23, Ex. 3, ¶ 2).  Saint-Gobain did not remove the last of the materials until October 19, 2015.  (Doc. 13, ¶ 26).  For the period of time between May 13, 2015, and October 31, 2015, Arkansas Warehouse periodically billed Saint-Gobain for the use of the warehouse storage space.  (Doc. 13, ¶¶ 27-34).  Saint-Gobain refused to pay these bills, and to date has not paid any rent to Arkansas Warehouse.  (Doc. 13, ¶¶ 36-37).

## II.  Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden of proving the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law.  Fed. R.

---

[1] All facts stated herein are drawn from the plaintiff's motion for summary judgment and supporting documents.

Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999). When the moving party has met its burden, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(c)). "The nonmoving party must do more than rely on allegations or denials in the pleadings, and the court should grant summary judgment if any essential element of the prima facie case is not supported by specific facts sufficient to raise a genuine issue for trial." *Register v. Honeywell Fed. Mfg. & Techs., LLC*, 397 F.3d 1130, 1136 (8th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

This same standard applies where, as here, the parties file cross motions for summary judgment. When the parties agree that there exists no genuine issue as to any material fact, "summary judgment is a useful tool whereby needless trials may be avoided, and it should not be withheld in an appropriate case." *United States v. Porter*, 581 F.2d 698, 703 (8th Cir. 1978). Each motion should be reviewed in its own right, with each side "entitled to the benefit of all inferences favorable to them which might reasonably be drawn from the record." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983). "[W]here conflicting inferences as to a material fact may reasonably be drawn from the materials before the court, the case is not appropriate for summary judgment." *Id.*

"A party cannot defeat a summary judgment motion by asserting the mere existence of some alleged factual dispute between the parties; the party must assert that there is a genuine issue of material fact." *Quinn v. St. Louis Cnty.*, 653 F.3d 745, 751 (8th Cir. 2011) (internal quotation omitted). "In order to show that disputed facts are material, the party opposing

summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit." *Id.*

## III.   Discussion

The Court will first analyze the existing lease contracts between Oxane and Arkansas Warehouse for the use of Arkansas Warehouse's facilities, and then look at the sales contract for the transfer of the materials from Oxane to Saint-Gobain.  After reviewing these existing contracts, the Court will explain why there is no need to imply a contract as a matter of law because complete legal relief can be achieved under the express contracts that exist.

### A.   Contracts for the Lease of Premises Between Arkansas Warehouse and Oxane

Arkansas Warehouse and Oxane entered into three valid oral contracts for the lease of commercial facilities.  (Doc. 11-3, ¶ 6).  Arkansas Warehouse presented evidence suggesting that the rates used in the leases were "negotiated at arm's length" and "commercially reasonable in light of existing lease and storage rates in the Fort Smith area."  (Doc. 11-3, ¶ 16).  These agreements went on for some time, and there is no indication that either party had any trouble with these leases until Oxane stopped paying rent.  The leases represented a substantial source of income for Arkansas Warehouse, which billed Oxane $52,050 each month.  (Doc. 11-3, ¶ 25).  The evidence of this ordinary course of dealing establishes that there was an express contract—albeit an oral one—between Arkansas Warehouse and Oxane.

Arkansas Warehouse does not contest the validity, completeness, or fairness of the allocation of risk in its contract with Oxane.  Instead, it urges the Court to find that this was not an express contract that would preclude Arkansas Warehouse's unjust enrichment claim because that contract was oral instead of written.  (Doc. 12, p. 17).  The case law on this point focuses its

analysis on the completeness of the contract in dispute rather than its form. *See Sparks Reg'l Med. Ctr. v. Blatt*, 935 S.W.2d 304, 308 (Ark. 1996) (explaining that courts should look for an "underlying express contract [that] already exists and fairly distributes the risks among the parties involved"). While some Arkansas cases suggest that an express contract should be in writing to preclude an unjust enrichment action between the parties to the contract, there are also cases that do not state that the form of the contract should be dispositive.[2] That is, although Arkansas law regards reducing an express contract to writing as prudent, it is not required. Therefore, the Court will not ignore the contract between Arkansas Warehouse and Oxane solely because of its form. Furthermore, the statute of frauds is not at issue in this case. While this commercial contract between two businesses for the lease of several large warehouses resulting in monthly billing of $52,050 would no doubt have been more comprehensive had it been in writing, the absence of a writing does not allow the avoidance of an oral contract the validity of which is not in dispute. The Court finds that the lease contract between Arkansas Warehouse and Oxane was a valid and complete contract regardless of the fact that it was oral instead of written.

Legal relief may be available to Arkansas Warehouse under this contract. Arkansas Warehouse and Saint-Gobain dispute whether this contract was cancelled by Oxane, and if so, when it was cancelled. (Doc. 12, pp. 6-7; Doc. 18, pp. 8-9). There is also some dispute between the parties about the timing and legal effect of Oxane's bankruptcy proceedings. (Doc. 19, ¶ 3;

---

[2] *Compare Travelers Cas. & Sur. Co. of Am. v. Cummins Mid-S., LLC*, 460 S.W.3d 308, 315 (Ark. App. 2015), *reh'g denied* (May 20, 2015) (stating that "the concept of unjust enrichment has no application when an express written contract exists") *with Adkinson v. Kilgore*, 970 S.W.2d 327, 331 (Ark. App. 1998) (stating that "where there is an express contract in existence, the law will not imply a quasi-contract"). *See also* Howard W. Brill, *Arkansas Law of Damages* § 31:2 (2015) ("As a general rule, if the situation or relationship is covered by a valid, legal and binding contract, an implied in law theory cannot be successfully asserted"); Arkansas Model Jury Instruction 2404 ("[a]n express contract may be oral or written.").

Doc. 23, ¶ 3).  These disputes are not dispositive, however, as they do not change the fact that Arkansas Warehouse has an avenue of relief against Oxane under their express contract.  If the contract was not cancelled, then Arkansas Warehouse would have a breach of contract action against Oxane for continued occupation of the premises without payment of rent.  If the contract was cancelled, then Arkansas Warehouse would have an action against Oxane to either compel Oxane to remove the materials or pay for the cost of removal to restore the premises to the condition before Oxane's occupation with the materials.  If any of Oxane's obligations to Arkansas Warehouse were affected by Oxane's bankruptcy proceedings, then Arkansas Warehouse could have been a party to those proceedings.  Regardless of Oxane's abandonment of the leases or of its bankruptcy proceedings, the contract between Oxane and Arkansas Warehouse gives Arkansas Warehouse an avenue of relief at law.

### B.      Contract for the Sale of Materials Between Oxane and Saint-Gobain

Oxane and Saint-Gobain entered into a sales agreement whereby Saint-Gobain would acquire the materials from Oxane.  This sales contract specifically states:

> SG agrees that all costs and expenses of acquiring, loading, and shipping the Materials shall be at SG's sole cost and expense. SG's expenditures in lieu of Oxane's continued incurrence of costs and expenses related to storing the Materials and the avoidance of costs and expenses Oxane would incur should it ship and dispose of such material shall constitute consideration for the purchase. SG shall endeavor to have all Materials removed and ship to SG related facilities on or before July 15, 2015, subject to the receipt by SG of reasonable and adequate access to the Materials at the applicable locations to enable SG to remove and load such materials.

(Doc. 17-2, ¶ 2).  This contract shows that Oxane was interested in discontinuing its obligations to pay rent for the storage of the materials.  Further, this contract indicates that Saint-Gobain obligated itself to ship and dispose of the materials, and that it would "endeavor" to do so on or

before July 15, 2015.  This contract is not an express assumption of liability for Saint-Gobain to pay rent to Arkansas Warehouse, and Arkansas Warehouse is not a third-party beneficiary.  This is a contract between Oxane and Saint-Gobain, and any violation of the contract could be brought to court in a breach of contract action by those parties.

The contract between Oxane and Saint-Gobain further states that "SG shall acquire title and risk of loss of such Materials as of the time of loading on SG's transportation vehicles."  (Doc. 17-2, ¶ 2).  While the default state contract law governing this sale of goods might have resulted in a different arrangement, Arkansas Warehouse does not contest that Saint-Gobain and Oxane specifically contracted for title to pass at the time of picking up the materials.  (Doc. 12, p. 10).[3] Arkansas Warehouse instead urges this Court to split the title to the materials into equitable and legal title, and find that equitable title passed at the time of contracting obligated Saint-Gobain to pay for the storage of the materials.  (Doc. 12, pp. 11-14).  This argument for title splitting in this context lacks support under Arkansas law, and the Court will not split title.  As per the contract between Oxane and Saint-Gobain, title passed to Saint-Gobain at the time that the materials were loaded onto Saint-Gobain's trucks.  Property owned by Saint-Gobain was never stored in facilities operated by Arkansas Warehouse.

The Court notes that Oxane may have some legal relief under this contract.  There is some dispute between the parties about why the materials were not removed from Arkansas Warehouse by July 15, 2015, as Saint-Gobain and Oxane agreed.  (Doc. 11-3, ¶ 32).  But the delay, regardless of why it occurred, resulted in materials owned by Oxane being stored in Arkansas Warehouse premises without payment of rent.  If Saint-Gobain's delay caused Arkansas Warehouse to file suit

---

[3] Oxane's abandonment of assets in its bankruptcy proceeding does not affect the contract at issue in this litigation.

against Oxane as described in Section A above, Oxane would then have a claim against Saint-Gobain for breach of contract.

### C.    Contract Implied by Law for Lease of Premises Between Arkansas Warehouse and Saint-Gobain

A contract implied by law, or a "quasi-contract," is a legal fiction created to do justice as an equitable remedy when there is no assent of the parties. *Dunn v. Phoenix Vill., Inc.*, 213 F. Supp. 936 (W.D. Ark. 1963); *Dews v. Halliburton Indus., Inc.*, 708 S.W.2d 67, 69 (Ark. 1986). The underlying theory for a lawsuit in equity to recover under a contract implied by law is unjust enrichment. *First Nat. Bank of DeWitt v. Cruthis*, 203 S.W.3d 88, 93 (Ark. 2005). It is founded on the idea that one party should not be permitted to enrich itself at the expense of another, and that when such enrichment occurs restitution should be imposed for the benefit received where it is just and equitable to do so. *Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 210 S.W.3d 101, 112 (Ark. 2005). "[T]he mere existence of a contract between the parties does not automatically foreclose a claim of unjust enrichment," but "when an express contract does not fully address a subject, a court of equity may impose a remedy to further the ends of justice." *Campbell v. Asbury Auto., Inc.*, 381 S.W.3d 21, 37 (Ark. 2011) (citing *Klein v. Arkoma Prod. Co.*, 73 F.3d 779, 786 (8th Cir. 1996) (citing *Roberson Enters., Inc. v. Miller Land & Lumber Co.*, 700 S.W.2d 57, 59 (Ark. 1985))). "Courts should be hesitant to employ a quasi-contractual theory of recovery where an underlying express contract already exists and fairly distributes the risks among the parties involved." *Sparks Reg'l Med. Ctr.*, 935 S.W.2d at 308.

However, it is a longstanding principle of Arkansas law[4] that "the law never accommodates a party with an implied contract when he has made a specific one as to the same subject matter." *Jackson v. Jones*, 22 Ark. 158, 162 (1860) (discussing *Ferguson v. Carrington*, 17 *Eng. Com. Law R*. 36).  Judge Richard S. Arnold explained this rule as follows:

> The reason for the rule that someone with an express contract is not allowed to proceed on an unjust-enrichment theory, is that such a person has no need of such a proceeding, and, moreover, that such a person should not be allowed by means of such a proceeding to recover anything more or different from what the contract provides for.

*United States v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603, 609 (8th Cir. 1999) (declining to follow this rule because the underlying reason for the rule was not present in that case).  In *Applied Pharmacy Consultants, Inc.*, the same parties would have been liable for the same amount of money under either theory of the case so pursuing relief on either the express contract or the implied contract was not improper.

This rule extends beyond the context of the two parties to an original express contract, and "also applies to defendants who are not a party to the express contract."  *Tuohey v. Chenal Healthcare, LLC*, --- F.Supp.3d ---, 2016 WL 1180339, at *5 (E.D. Ark. Mar. 25, 2016) (citing *Servewell Plumbing*, 210 S.W.3d at 112).

The Court will not find that there was a contract implied by law to hold Saint-Gobain liable to Arkansas Warehouse for rent because the express contracts that exist in this case address the

---

[4] *See* Howard W. Brill, *Arkansas Law of Damages* § 31:2 (2015) ("As a general rule, if the situation or relationship is covered by a valid, legal and binding contract, an implied in law theory cannot be successfully asserted.") (*citing Lowell Perkins Agency, Inc. v. Jacobs*, 469 S.W.2d 89 (1971), *Adkinson*, 970 S.W.2d at 327, *Coleman's Serv. Ctr., Inc. v. F.D.I.C.*, 935 S.W.2d 289 (1996), *Travelers Cas. & Sur. Co. of Am. v. Cummins Mid-South, LLC*, 460 S.W.3d at 308).

payment of rent and fairly allocate the risk of nonpayment.  As discussed above, Oxane was expressly obligated to pay rent to Arkansas Warehouse.  The sale of the materials from Oxane to Saint-Gobain did not expressly obligate Saint-Gobain to pay Oxane's rent to Arkansas Warehouse.  Further, Arkansas Warehouse has submitted that there was no express contract obligating Saint-Gobain to pay rent.  (Doc. 11-3, ¶ 23 ("There was never any written (or oral) contract between Arkansas Warehouse and Saint-Gobain concerning storage of the materials.")).  As to the issue of fair allocation of risk, the express contract between Arkansas Warehouse and Oxane fully and fairly addresses the issue of rent.  The express contract between Oxane and Saint-Gobain for the sale of the Materials fully and fairly addresses the issue of removal of the materials from property Oxane was renting.  As described in Sections A and B, legal relief is available under both of the express contracts that could resolve this dispute without the need for an equitable remedy.

## IV.     Conclusion

IT IS THEREFORE ORDERED that Saint-Gobain's motion for summary judgment (Doc. 17) is GRANTED, and that Arkansas Warehouse's motion for summary judgment (Doc. 11) is DENIED.  Arkansas Warehouse's claims are DISMISSED WITH PREJUDICE.  Judgment will be entered in favor of Saint-Gobain.

IT IS FURTHER ORDERED that Saint-Gobain's pending motion to continue trial is DENIED AS MOOT.

IT IS SO ORDERED this 20th day of October, 2016.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE